UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

DIAMILETTE MCMILLER,
        Plaintiff,

      v.                               CASE NO. 3:13-cv-577 (VAB)

PRECISION METAL
PRODUCTS, INC.,
        Defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Diamilette McMiller, sued her former employer, Precision Metal

Products, Inc. ("Precision Metal"), claiming that the company discriminated

against her and refused to accommodate her disability in violation of the

Americans with Disabilities Act of 1990, 42 U.S.C. §12111, *et seq.*  Am. Compl.

¶¶ 1, 6-11, ECF No. 25.  She alleges that, as a result of Precision Metal's

actions, she resigned her job and has suffered "severe emotional distress."  *Id.*

¶¶ 12-13.  Precision Metal has moved for summary judgment on all of Ms.

McMiller's claims.  Mot. for Summ. J. 1, ECF Nos. 27-28.  For the reasons that

follow, the motion is **GRANTED** in its entirety.

### I.    RELEVANT FACTS[1]

Ms. McMiller was employed by Precision Metal from February 26, 2008 to

May 26, 2010 as a "Customer Coordinator."  Def.'s Local Rule 56(a)1 Stmt. ¶¶1,

2, 103, ECF No. 27-1.  The parties agree that Ms. McMiller's job function was to

---

[1] These facts are based on a review of the pleadings, Local Rule 56(a) Statements, and any responses, as well as exhibits filed by both parties accompanying the Motion for Summary Judgment and its Opposition.  Unless noted otherwise, facts described in this section are undisputed or the opposing party has not pointed to any contradictory evidence in the record.

ensure that customer orders were shipped on time and that she maintained a

document referred to as the "bible," that kept track "of all production" of Precision

Metal.  *Id.* ¶¶ 3, 9.  In this role, she made and handled telephone calls, printed

and edited documents, and processed customer orders.  *Id.*  ¶¶ 5, 8, 12, 14.  In

terms of the post's physical demands, she walked around Precision Metal's

departments to check on the status of orders, sat at her desk, and occasionally

packed instruments, which she estimated weighed under one pound.  *Id.* ¶¶ 6,

10-11.

The parties also agree that Ms. McMiller injured her wrist, knee, neck, and

back on January 18, 2010 and was out of work on a leave of absence due to the

injuries she suffered from that date until March 1, 2010.  *Id.* ¶¶ 15-16.  In her

Connecticut Commission on Human Rights and Opportunities ("CHRO")

Complaint, Ms. McMiller categorizes the injuries as sprains, but there is no other

record evidence to support this label.  Pl.'s Local Rule 56(a)2 Stmt. ¶23, ECF No.

33-1 (citing Def.'s Ex. A, CHRO Compl. ¶6, ECF No. 27-2).[2]  When she returned

to work at Precision Metal, Ms. McMiller believed her doctor had instructed her

only to engage in "light duty." Def.'s Local Rule 56(a)1 Stmt. ¶¶ 17, 24-25, ECF

No. 27-1.

Ms. McMiller's doctor provided three notes about her condition that are in

the record.  The first note, dated February 18, 2010, indicated that she had

"multiple body" injuries and should only engage in "sedentary work," which was

---

[2] Ms. McMiller testified that she attended physical therapy for her wrist, knee, and neck injuries for an undisclosed length of time.  Def.'s Ex. B, McMiller Dep. 36:25-37:5, ECF No. 27-2.  In addition, Ms. McMiller could not recall precisely when she stopped receiving treatment for this injury but believed it was around 2011 or 2012.  Def.'s Local Rule 56(a)1 Stmt. ¶75, ECF No. 27-1.

defined in the note as "[l]ifting 10 pounds maximum.  Carrying such articles as dockets, ledgers, and small tools.  Work essentially involves sitting and is considered sedentary if only a small amount of walking is necessary to carry out your duties."  Def.'s Ex. E, ECF No. 27-3; Pl.'s Ex. 5a, ECF No. 33-3 (same content as Defendant's exhibit).  It also limited her to "up to 2 hrs per day on keyboard."  *Id.*  The second one, dated March 3, 2010, noted her injury was in the "right knee/multiple" and advised that she work an eight-hour day of "sedentary work," with up to two hours per day on a keyboard and "limit[ing] repetitive motions."  Def.'s Ex. F, ECF No. 27-3; Pl.'s Ex. 5b, ECF No. 33-3 (same content as Defendant's exhibit).  According to the last note from her doctor, dated March 17, 2010, Ms. McMiller had injured her neck and was again supposed to be engaged in "sedentary work."  Def.'s Ex. G, ECF No. 27-3; Pl.'s Ex. 5c, ECF No. 33-3 (same content as Defendant's exhibit).  Her employer was to "restrict lifting waist to shoulder height," meaning that she was not to lift anything above the shoulder.  *Id.*  The note also indicated that she "may scan, shred, use phone, type on computer for up to two hours each."  *Id.* The parties agree this last note also indicated that Ms. McMiller should vary her activities among these tasks every two hours.  Def.'s Local 56(a)1 Stmt. ¶¶37-39, ECF No. 27-1.

When Ms. McMiller returned from work after her injury, she was not assigned the same duties she had before.  Instead, she was assigned to scan "old client documents" into a computer database and to shred those same documents once they were scanned.  Ex. O, O'Brien Aff. ¶12, ECF No. 27-3;

Def.'s Local Rule 56(a)1 Stmt. ¶51, ECF No. 27-1; Pl.'s Local Rule 56(a)2 Stmt.

¶100, ECF No. 33-1; Def.'s Ex. B, McMiller Dep. 62:16-63:9, ECF No. 27-2.  This

task also involved the removal of staples from some documents and the entry of

limited amounts of data about the scanned documents into a computer.  Def.'s

Local Rule 56(a)1 Stmt. ¶51, ECF No. 27-1.

Ms. McMiller found these new tasks to be "extremely repetitive,"

"demeaning," and "monotonous" and believed that they were "designed to harass

and humiliate [her]."  Pl.'s Stmt. Of Disputed Facts ¶¶ 4, 6-7, ECF No. 33-1.  In

Ms. McMiller's view, she could have done her old job with accommodation, and

her new duties did not accommodate and, in fact, were worse for her injuries

than her traditional duties.  *Id.* ¶¶ 2, 8.  She also believes that the change in her

duties was permanent and was effectively a demotion.  *Id.* ¶¶ 1-2, 5.  In support

of this contention, Ms. McMiller observed another employee performing her

duties and testified that she was told that her duties had been taken away from

her.  Pl.'s Local Rule 56(a)2 Stmt. ¶18, ECF No. 33-1.

Both Sean O'Brien, a plant manager at Precision Metal, and John Baloga,

Precision Metal's General Manager, do not believe that Ms. McMiller could have

done her prior job, even with an accommodation, "since [it] involved walking

around the shop floor to check on the status of customer concerns and orders,

and did not permit her to remain sedentary."  Ex. O, O'Brien Aff. ¶¶2, 13, ECF

No. 27-3; Ex. M, Baloga Aff. ¶¶2, 16, 24, ECF No. 27-3.  Both individuals also

indicate that Ms. McMiller's job functions "were never removed from her" and

instead she had been assigned light work until her doctor determined she was

able to return to her normal duties.  Ex. O, O'Brien Aff. ¶13, ECF No. 27-3; Ex. M.

Baloga Aff. ¶¶7-10, 24, ECF No. 27-3.  Precision Metal admits that it assigned a

portion of Ms. McMiller's duties to another individual, Edward Merola, but

indicates that Ms. McMiller was never told he was to replace her permanently.

Mot. for Summ. J. 4, ECF No. 27; Def.'s Local Rule 56(a)1 Stmt. ¶20, ECF No.

27-1.

     While Ms. McMiller was performing the scanning and shredding tasks

Precision Metal had given her, she made several requests for accommodation.

She told Mr. Baloga that removing staples from the documents caused her hand

to swell.  Def.'s Local Rule 56(a)1 Stmt. ¶¶53-54, 69, ECF No. 27-1.  In

response, Precision Metal bought her a new staple remover.  *Id.* ¶55.  While Ms.

McMiller has indicated that she continued to experience pain while using this new

staple remover, she did not inform anyone at Precision Metal.  *Id.* ¶73.  Ms.

McMiller also complained that some of the documents she was working with

were stored on a high shelf and that it strained her neck to reach them.  *Id.* ¶¶57-

60.  In response, Precision Metal moved the documents she was scanning to a

lower level.  *Id.* ¶61.  Finally, Ms. McMiller complained that she spent too much

time standing during the day because she needed to stand while scanning.  *Id.*

¶¶62-63.  In response, Precision Metal brought in a mini-scanner to be placed on

a desk so that Ms. McMiller could sit while she scanned.  *Id.* ¶¶64-65.

     Ms. McMiller also states that she suffered emotional distress while

working at Precision Metal.  She explains that Precision Metal's other employees

were told not to speak to her because she was identified as the "company

troublemaker" and that no one acknowledged her presence and only spoke to her when needed. *Id.* ¶¶77-79, 106. However, she admits to having brief conversations with other employees after her injury. *Id.* ¶¶82-83, 92; Pl.'s Local Rule 56(a)2 Stmt. ¶¶82-83, 92, ECF No. 33-1. She also indicated that she received a "dirty look" from a colleague that upset her and made her feel "harassed." Def.'s Local Rule 56(a)1 Stmt. ¶¶91, 93, ECF No. 27-1. Ms. McMiller did not speak to anyone at Precision Metal about the distress she felt, but she did see a psychologist for some period of time. *Id.* ¶¶86-90.[3]

Ms. McMiller ultimately submitted a letter of resignation on May 26, 2010, in which she stated "[t]he reason for this decision is based on the treatment that [she has] endured in the past few months from management personnel… [that] has caused a lot of mental anguish." *Id.* ¶¶103-104 (internal quotation marks omitted and alterations in original); *see also* Def.'s Ex. D, Resignation Letter, ECF No. 27-3. After she resigned, on September 18, 2012, Ms. McMiller also settled a worker's compensation claim arising out of the injury that is the focus of this case for $85,000. Def.'s Local 56(a)1 Stmt. ¶100, ECF No. 27-1; Ex. H, Settlement Agreement at 2, ECF No. 27-3 (the agreement indicates that the $85,000 "shall be made and accepted as full and final settlement of all compensation for said injuries… the payment of such sum shall constitute a complete satisfaction of all claims due to or to become due at anytime in favor of anybody on account of the claimed injuries… and all claims for discrimination and wrongful termination including claims pursuant to C.G.S. §31-290a.").

---

[3] Ms. McMiller objects to the time and location of the psychiatrist appointment listed in paragraph 86 of Defendant's Local 56(a)1 Statement but admits the fact that she saw a psychiatrist. Pl.'s Local Rule 56(a)2 Stmt. ¶86, ECF No. 33-1.

## II.   STANDARD

To grant a motion for summary judgment, the Court must determine that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Bouboulis v. Transp. Workers Union of Am.,* 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  A dispute regarding a material fact is "genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Williams v. Utica Coll. of Syracuse Univ.,* 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted).  In assessing a summary judgment motion, the Court must resolve all ambiguities, including credibility questions, and draw all inferences from the record as a whole in favor of the non-moving party.  *Kayton v. Elec. Boat Corp.,* 609 F.3d 537, 546 (2d Cir. 2010) (citations omitted).

In discrimination cases brought under the ADA, the Court must apply the burden-shifting framework set out by the Supreme Court in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802-804 (1973).  *See Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir. 1998) (applying *McDonnell Douglas* to an ADA claim.)  Under this framework, Ms. McMiller bears "the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination."  *Heyman v. Queens Vill. Committee for Mental Health for Jamaica Cmty. Adolescent Prog., Inc.,* 198 F.3d 68, 72 (2d Cir. 1999) (citation omitted).  When Ms. McMiller meets this burden, "[t]he burden of production then

shifts to defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action." *Id.* (citation omitted).  If the Precision Metal meets this burden, to sustain her claim "Plaintiff then must show that the proffered reason was merely a pretext for discrimination." *Id.* (citation omitted).

### III.   DISCUSSION

Precision Metal moves for summary judgment on Ms. McMiller's claims for the following four reasons: (1) "the Plaintiff has failed to plead a *prima facie* case for discrimination," (2) even if the Plaintiff has pled a prima facie case of discrimination, Precision Metal "has provided a legitimate business reason for the temporary change to the Plaintiff's job duties," (3) Ms. McMiller "by her own testimony, has admitted that she was provided each accommodation requested," and (4) "Ms. McMiller has "introduced no evidence to support" an emotional distress claim.  Mot. for Summ. J. 1, ECF No. 27.  The Court will first analyze the intentional infliction of emotional distress claim, then the ADA claim.

### A.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Ms. McMiller claims that being employed by Precision Metal caused her emotional distress.  She styles this claim as one of intentional infliction of emotional distress, so the Court will consider it accordingly.  Opp. Br. 14-15, ECF No. 33.

For Ms. McMiller to prevail on her intentional infliction of emotional distress claim, she must show (1) that Precision Metal intended to inflict

emotional distress or knew or should have known that emotional distress was the likely result of its conduct; (2) that the conduct was extreme and outrageous; (3) that the Defendant's conduct was the cause of Ms. McMiller's distress; and (4) that the emotional distress she sustained was "severe." *Appleton v. Bd. of Educ. Of Town of Stonington,* 254 Conn. 205, 210 (2000) (citation omitted). To survive Precision Metal's Motion for Summary Judgment on this claim, Ms. McMiller must show a genuine question of material fact exists with respect to all of these four elements. *See Muniz v. Kravis,* 59 Conn. App. 704, 708-709 (Conn. App. Ct. 2000) (a plaintiff must prove all four elements to prevail on an intentional infliction of emotional distress claim) (citation omitted). Because she has failed to establish a question of material fact exists with respect to the second element, the Court must grant Precision Metal's Motion for Summary Judgment on this claim.

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine… Only where reasonable minds disagree does it become an issue for the jury." *Carone v. Mascolo,* No. 3:06cv01094 (DJS), 2007 WL 2318818, at *3 (D. Conn. Aug.14, 2007) (quoting *Appleton,* 254 Conn. at 210). Extreme and outrageous conduct "exceeds 'all bounds usually tolerated by decent society.'" *Dollard v. Board of Educ. of Town of Orange,* 63 Conn. App. 550, 554 (Conn. App. Ct. 2001) (quoting *Petyan v. Ellis,* 200 Conn. 243, 254 n.5 (1986), *superseded by statute on other grounds, Chadha v. Charlotte Hungerford Hosp.,* 272 Conn. 776, 787, 793 n.21 (2005)). "'Liability [for intentional infliction of emotional distress]

has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Appleton,* 254 Conn. at 210-11 (citation omitted).  Conduct that is "merely insulting or displays bad manners or results in hurt feelings" cannot be extreme and outrageous for the purposes of an intentional infliction of emotional distress claim.  *Id.* at 211 (citation omitted).

"In the employment context, it is the employer's conduct, not the motive behind the conduct, that must be extreme or outrageous."  *Miner v. Town of Cheshire,* 126 F. Supp.2d 184, 195 (D. Conn. 2000) (citation omitted).  Bearing in mind that "the federal courts in this District, applying Connecticut law, have interpreted the qualification of extreme and outrageous conduct strictly," *Carone,* 2007 WL 2318818 at *4 (citations omitted), the Court finds that Ms. McMiller has failed to show that a genuine question of material fact exists as to whether Precision Metal's conduct was "extreme and outrageous."

Ms. McMiller has introduced evidence showing that Precision Metal assigned her scanning and shredding tasks after her injury.  She also indicates that she found these tasks humiliating and a demotion.  However, the work assignment of scanning and shredding documents is not "utterly intolerable in a civilized community."  *Appleton,* 254 Conn. at 210-11; *see also Miner,* 126 F. Supp.2d at 195 ("An employer's adverse yet routine employment action [ ] does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner.") (citations omitted).

Even if Ms. McMiller was assigned to scanning and shredding as part of some conspiracy to force her to resign, "[a] concerted effort to remove an employee [ ] does not necessarily constitute outrageous conduct." *Gillians v. Vivanco-Small,* 128 Conn. App. 207, 213 (Conn. App. Ct. 2011) (citations omitted) (affirming a grant of summary judgment in favor of former employer because conspiring to force plaintiff to withdraw an institutional grievance, being "hostile and uncooperative," falsely accusing plaintiff of racial and sexual bias, giving her a bad performance review, and demoting her did not constitute "extreme and outrageous" conduct); *accord Miner,* 126 F. Supp.2d at 195 (noting that an improper motive did not render actions typically taken by an employer "extreme or outrageous").

Ms. McMiller also claims that her interaction with her colleagues, or lack thereof, upset her. She indicates that other Precision Metal employees were told she was a "troublemaker" and only spoke to her when necessary. She also claims that one employee gave her a "dirty look." Finally, she claims that some fellow employees commented about her scanning and shredding duties. She testified that another employee noted that "'pretty soon you're going to be able to make pillows and a bed so you can sleep in here' because there was a massive amount of shred paper and bags full of shredded papers." Def.'s Ex. B McMiller Dep. 43:15-18, ECF No. 27-2. She also testified that another employee asked to her shred something, as a joke. *Id.* at 60:6-12.

Taking all of these facts as true, the Court cannot find that they constitute extreme and outrageous behaviors. Being ignored by co-workers, as a matter of

11

law, cannot constitute extreme and outrageous conduct without more.  *See Luedee v. Strouse Adler Co.,* No. CV 970257057, 1998 WL 46628, at *4 (Conn. Super. Ct. Jan. 29, 1998) (granting a motion to strike an intentional infliction of emotional distress claim based on allegations that plaintiff's colleagues and managers entirely ignored her at work and made her position "insignificant and irrelevant").  Nor can "looks" or verbal threats.  *See Miner,* 126 F. Supp.2d at 195 ("Connecticut courts hold that insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress.") (citations omitted); *see also Perrelli v. S. New Eng. Telephone Co.,* No. 399274, 2000 WL 422225, at *1-2 (Conn. Super. Ct. Apr. 4, 2000) (granting summary judgment in favor of an employer and its employee on an intentional infliction of emotional distress claim based on frequently made comments to the plaintiff that she "couldn't do her job," "was very quiet and there must be something wrong with [her]" and was a "bitch," because this conduct was merely rude and did not qualify as extreme and outrageous).

While all of "[t]hese occurrences may very well have been distressing and hurtful to the plaintiff[, t]hey do not [ ] constitute extreme and outrageous conduct."  *Appleton,* 254 Conn. at 211.  For all of the foregoing reasons, Precision Metal's Motion for Summary Judgment on Ms. McMiller's intentional infliction of emotional distress claim is granted.

### B.  ADA CLAIMS

With respect to the ADA, Ms. McMiller makes two claims.  First, she contends that she was discriminated against by being "demoted" and constructively discharged because of her disability.  Am. Compl. ¶¶10-11, ECF No. 25.  Second, she claims that Precision Metal failed to provide reasonable accommodation for her disability because she was given tasks she could not do without pain, and she was not given her previous job responsibilities, which she claims could have been done with accommodation.  *Id.*  The Court finds that Ms. McMiller has failed to show that a genuine issue of material fact exists with respect to both claims.  The Court will analyze each of these issues in turn.

### i.    Ms. McMiller Has Failed to Establish a Discrimination Claim under the ADA

To establish a prima facie case of employment discrimination in violation of the ADA, Ms. McMiller carries the burden of establishing that (1) her employer is subject to the ADA, (2) she was disabled within the meaning of the statute, (3) she was otherwise qualified to perform the essential job functions of her job, with or without reasonable accommodation, and (4) she suffered an adverse employment action because of the disability.  *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir. 2001) (citation omitted).  It is undisputed that Ms. McMiller has met the first prong.  Precision Metal challenges all of the other elements of her prima facie case.  It also argues that it has provided a non-discriminatory reason for its actions and that Ms. McMiller has failed to provide any evidence that the reason is pretextual.

Ms. McMiller advances two theories of "adverse employment action." First, she claims that because she was given only the tasks of scanning and shredding documents, which were repetitive and menial in her view, she was demoted.  Second, she also claims that her work environment became so difficult that she was constructively discharged or forced to resign.  Because she fails to show that a genuine question of material fact exists under either theory, Ms. McMiller's employment discrimination claim under the ADA must be dismissed.

### a. Ms. McMiller's Claimed "Demotion"

As part of her *prima facie* discrimination case, Ms. McMiller must establish "that she was subjected to an adverse employment action under circumstances giving rise to an inference of disability discrimination within the meaning of the statute." *Behringer v. Lavelle School for Blind,* No. 08 Civ. 4899(JGK), 2010 WL 5158644, at *11 (S.D.N.Y. Dec. 17, 2010).  To show an adverse employment action, Ms. McMiller must show that she endured a "'materially adverse change in the terms and conditions of employment." *Adams v. Festival Fun Parks, LLC,* 560 F. App'x 47, 49 (2d Cir. 2014) (citation omitted).

"An adverse employment action is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Littlejohn v. City of New York,* --- F. 3d ---, 2015 WL 4604250, at *8 n. 10 (2d Cir. Aug. 3, 2015) (citation omitted) (applying Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*)[4]; *see also Lewis v. Boehringer Ingelheim Pharms., Inc.,* No.

---

[4] The Court believes that analysis applied in Title VII cases has also been applied with respect to the same criteria for the ADA on the general elements of discrimination claims.  *See e.g., Robinson v. Dibble,* --- F. App'x ---, 2015 WL 3372190, at *1-2 (2d Cir. May 26, 2015) (noting that both Title VII and ADA claims are analyzed under the

3:12-cv-406 (JBA), --- F. Supp.3d ---, 2015 WL 106057, at *7 (D. Conn. Jan. 7, 2015) (noting the same in the ADA context) (citation omitted).  It "'might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices… unique to a particular situation.'"  *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 641(2d Cir. 2000) (citation omitted and alteration in original) (under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 *et seq.*)[5]; *see also Adams,* 560 F. App'x at 49 (noting the same list in the ADA context).

"In determining material adversity, 'context matters, as some actions may take on more or less significance depending on the context.'" *Boehringer Ingelheim Pharms, Inc.,* 2015 WL 106057, at *7 (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F.3d 556, 568 (2d Cir. 2011)).  There is also no bright-line test for determining what constitutes an adverse employment action. *See Giambattista v. Am. Airlines, Inc.,* 5 F. Supp.3d 284, 292 (E.D.N.Y. 2014) (citation omitted).

Ms. McMiller claims that she was demoted because she was assigned to scan and shred, as opposed to processing customer orders and maintaining the

---

*McDonnell Douglas* burden-shifting framework and applying the same analysis to the adverse employment action inquiry under both statutes); *Wesley-Dickson, Warwick Valley Cent. Sch. Dist.,* 586 F. App'x 739, 741-44 (2d Cir. 2014) (applying the same analysis to questions of pretext under Title VII and the ADA)

[5] Regarding the general, overlapping elements of discrimination claims, the Second Circuit has applied the same analysis to both ADEA and ADA claims.  *See e.g., Browne v. CNN Am., Inc.,* 229 F.3d 1135, at *1-2 (2d Cir. 2000); *see also, Ajayi v. Dep't. of Homeless Servs.,* No. 08 Civ. 3649(LAK)(AJP), 2008 WL 1704329, at *11 (S.D.N.Y. June 18, 2009) ("Notably, both the ADA and ADEA require showing that: (1) the plaintiff suffered an adverse employment action; and (2) such adverse employment action was taken for discriminatory reasons.").

so-called bible.[6]  The Court finds that Ms. McMiller has failed to show that this

was an adverse employment action for two reasons.

First, Precision Metal changed her responsibilities to accommodate her

condition.  Both sides agree that Ms. McMiller submitted doctor's notes indicating

that she should be assigned "light duty tasks," which explicitly included shredding

and scanning.  Def.'s Local Rule 56(a)1 Stmt., ¶¶34, 37, ECF No. 27-1.  Ms.

McMiller admits that her employer followed the instructions contained in these

notes.  *Id.*  Both sides also agree that the doctor's notes were not changed or

updated during the roughly three months she was employed at Precision Metal

while suffering from her condition and engaging in the scanning and shredding

tasks.  *Id.* ¶50.  While it is true that an employer cannot disguise a discriminatory

action by labeling it an accommodation, *see Boehringer Ingelheim Pharms, Inc.,*

2015 WL 106057, at *8-9, in this case, Ms. McMiller provides no evidence that

Precision Metal was motivated by discrimination in any way.  Indeed, she admits

that her doctor's note explicitly permitted her to scan and shred, Ex. B. McMiller

Dep. 86:17-87:2, ECF No. 27-2, and that Precision Metal honored every request

for accommodation she made with respect to those tasks.

---

[6] Ms. McMiller also testified that she "was supposed to be cross-trained" with other front office personnel, but that she did not ultimately complete the training.  Def.'s Ex. B, McMiller Dep. 23:4-9, 43:9-13, ECF No. 27-2.[6]  However, she does not indicate how this training was linked to job prestige or advancement opportunities nor does she show that her failure to participate was linked to her new job responsibilities or her physical condition.  *See Hill v. Rayboy-Brauestein,* 467 F. Supp.2d 336, 352 (S.D.N.Y. 2006) ("When an employee cannot show material harm from a denial of training, such as a failure to promote or a loss of career advancement opportunities, there is no adverse employment action.") (citation omitted).  Thus, this fact fails to support her claim that her change in duties was an adverse employment action.

Second, even assuming that the change was permanent and equivalent to a "transfer," Ms. McMiller fails to show that the change in her responsibilities was an "adverse employment action," because she provides no evidence that it was a "setback" in her career. *Galabya*, 202 F.3d at 641. A transfer to "a job with the same rank and pay" can constitute an adverse employment action if the "new position was arguably less prestigious or entailed diminished responsibility." *Williams v. Alliance Nat'l. Inc.,* 24 F. App'x 50, 53 (2d Cir. 2001) (citation omitted) (applying Title VII); *see also Noon v. Int'l Bus. Machs.,* No. 12 Civ. 4544(CM)(FM), 2013 WL 6504410, at *7 (S.D.N.Y. Dec. 11, 2013) ("an assignment that [is] materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement.") (alteration in original) (quoting *Galabya,* 202 F.3d at 641). While it might seem plausible that scanning and shredding was less prestigious or entailed diminished responsibility, at summary judgment, Ms. McMiller must produce evidence tending to show that to be true. Because, she has produced no evidence at all of the impact of the shredding and scanning on her career, the relative prestige of her job, or the relative unimportance of the tasks she performed, the Court cannot find that her new tasks constituted a demotion. *See Kearney v. Cnty. of Rockland,* 373 F. Supp.2d 434, 443 (S.D.N.Y. 2005) (applying the ADEA) (finding that plaintiff's conclusory allegations that a transfer was a "setback" to her career because it precluded her from consideration for promotion and required her to do tasks for which she was untrained were insufficient to show that she suffered an adverse employment action because she provided no evidence to support her

testimony); *Bowen-Hooks v. City of New York,* 13 F. Supp.3d 179, 214 (E.D.N.Y. 2014) (applying Title VII) (dismissing a discrimination claim because "[t]here is no evidence that [p]laintiff's tasks and assignments had any actual material, as opposed to speculative, impact on her job.").

The only other evidence that her new duties constituted an adverse employment action is her own dislike of them.  But this evidence cannot alone show that an "adverse employment action" occurred. *See Williams v. R.H. Donnelley Corp.,* 368 F.3d 123, 128 (2d Cir. 2004) (applying Title VII) ("[S]ubjective, personal disappointments do not meet the objective indicia of an adverse employment action."); *Murphy v. Bd. of Educ. Of Rochester City Sch. Dist.,* 273 F. Supp.2d 292, 303-304 (W.D.N.Y. 2003) (applying Title VII) (finding that while the various transfers to different schools that plaintiff claimed constituted "adverse employment actions" "may not have been to plaintiff's liking, [ ] more than that is required" to show an "adverse employment action") (collecting cases).

Even assuming that Ms. McMiller's reassignment meets her prima facie burden of showing an adverse employment action, her claim still fails because she has not provided any evidence that Precision Metal's actions were motivated by discrimination.  Precision Metal claims it adjusted her responsibilities for a non-discriminatory reason–to ensure that an employee was continuously maintaining the so-called "bible." Mot. for Summ. J. 26-27, ECF No. 27.  Ms. McMiller fails to show that this reason is pretextual.

To raise a triable issue of fact as to whether a defendant's preferred non-discriminatory reasons are pretextual, a plaintiff must show that "'more likely than not [her disability] was the real reason for the [adverse action].'" *Duprey v. Prudential Ins. Co. of Am.,* 910 F. Supp. 879, 887 (N.D.N.Y. 1996) (quoting *Viola v. Philips Medical Sys. Of N. Am.,* 42 F.3d 712, 717 (2d Cir. 1994)). "[T]o rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are 'conclusory and unsupported by evidence of any weight.'" *Caronia v. Hustedt Chevrolet,* Civil Action No. 05-3526 (DRH)(MLO), 2009 WL 909729, at *5 (E.D.N.Y. Apr. 1, 2009) (as applied to the ADEA) (citing *Smith v. Am. Exp. Co.,* 853 F.2d 151, 154-55 (2d Cir. 1988)); *see also Khan v. Bank. of Am., N.A.,* 372 F. App'x 216, 218 (2d Cir. 2010) (finding that the plaintiff's "gut feeling" that his disability was the basis for his termination was "insufficient to raise a genuine issue of material fact regarding pretext.")

Both sides agree that Ms. McMiller maintained the bible before her injury and that the bible was crucial to Precision Metal's business.  Def.'s Local Rule 56(a)1 Stmt. ¶9, ECF No. 27-1; Def.'s Ex. B, McMiller Dep. 22:24-25, ECF No. 27-2.  Ms. McMiller fails to introduce any evidence, other than her own conclusory speculation, that disability discrimination was the motivating factor behind Precision Metal's decision to change her duties.  This evidence, without more, is insufficient at the summary judgment stage.  *See Kotlowski v. Eastman Kodak Co.,* 922 F. Supp. 790, 798-99 (W.D.N.Y. 1996) (finding that summary judgment was appropriate on an ADA claim where there were only "conclusory

19

allegations" that plaintiff's termination was motivated by disability-based

discrimination); *Graham v. Boehringer Ingelheim Pharms., Inc.,* 451 F. Supp.2d

360, 371 (D. Conn. 2006) (finding that to raise a genuine question of material fact

as to whether an employer's non-discriminatory reason was pretextual, plaintiff

cannot rely on "conclusory allegations" or "speculation" but "must offer some hard

evidence showing that its version of the events is not wholly fanciful.") (quoting

*Golden Pac. Bancorp v. FDIC,* 375 F.3d 196, 200 (2d Cir. 2004)); *see also*

*Zinnamon v. NYC Dep't. of Social Servs.,* No. 08-CV-5266 (ARR)(LB), 2010 WL

3325264, at *5 (E.D.N.Y. Aug. 18, 2010) (finding that plaintiff's only evidence that

the non-discriminatory reason for any adverse employment actions was pretext

consisted of plaintiff's own deposition testimony, "which is devoid of any concrete

evidence of discrimination, and instead contains only speculation and conclusory

allegations" because a plaintiff's "'subjective belief  that [s]he was not treated

fairly' [ ] 'is simply not enough to demonstrate pretext.'")(in the Title VII context)

(citations omitted).

Ms. McMiller claims that Precision Metal's reason is pretextual because

she could have maintained the bible upon her return to the workplace in March

2010 with accommodation.  However, she provides no evidence of this fact other

than her own testimony, which is insufficient to sustain her burden on summary

judgment.  *See Hoyt v. NYNEX Corp.,* No. 94-CV-01218 RSP/GJD, 1996 WL

550374, at *5 (N.D.N.Y. Sept. 25, 1996) ("Plaintiff's 'conclusory, self-serving

statement, standing alone,' is insufficient to establish that he is able to perform

the lineman job.") (citation omitted); *Mazza v. Bratton*, 108 F. Supp.2d 167, 175

(E.D.N.Y. 2000) (finding that at the summary judgment stage plaintiff could not rely only on his "bald assertion of a belief that he was able to [perform his job] at the time, unsupported by any medical or other objective evidence") (citation omitted).

Based on this evidence, no reasonable juror could conclude that Precision Metal's decision to change Ms. McMiller's duties gave rise to an inference of disability discrimination.  Thus, her claim of discrimination based on her so-called "demotion" must be dismissed.

### b. Ms. McMiller's Claimed "Constructive Discharge"

"To establish a 'constructive discharge,' a plaintiff must show that the employer 'deliberately ma[de her] working conditions so intolerable that [she was] forced into an involuntary resignation.'" *Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 360 (2d Cir. 1993) (citation and internal quotation marks omitted) (in the context of an ADEA claim).  The Second Circuit has characterized plaintiff's burden in showing constructive discharge under the ADA as a "high" one that requires proof of both "the employer's intent to create an 'intolerable' environment that forces the employee to resign" and that a "reasonable person would have found the work conditions so intolerable that he 'would have felt compelled to resign.'" *Adams,* 560 F. App'x at 49-50 (citation omitted). "Constructive discharge occurs only where an employee is subjected to an 'unreasonable risk of physical harm, to significant verbal abuse, or is forced to accept significantly lower pay or inferior working conditions." *Ongsiako v. City of New York,* 199 F. Supp.2d 180, 187 (S.D.N.Y. 2002) (citation omitted).

"'[A]n employee's mere dissatisfaction with job assignments or criticism from a supervisor do not, in themselves, give rise to a constructive discharge claim.'"  *Giambattista,* 5 F. Supp.3d at 292 (citation omitted); *Ongsiako,* 199 F. Supp.2d at 187 (noting in the ADA context that "[t]he employee's subjective assessment of working conditions as 'intolerable' is insufficient.") (citation omitted).  Even if a reasonable person might have "preferred not to continue working" for Precision Metal, this fact alone is insufficient to show constructive discharge.  *Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1156 (2d Cir. 1993) (in the ADEA context).

Ms. McMiller claims that her assigned tasks of scanning and shredding, as well as the rude treatment she received from colleagues, constituted a "constructive discharge."  The Court disagrees and, accordingly, finds that she has failed to prove her *prima facie* case under her constructive discharge theory.  Assignment to office-based tasks like shredding and scanning in this context cannot constitute an atmosphere "so intolerable" that it would have forced a reasonable person to resign.  *See Ongsiako,* 199 F. Supp.2d at 187 ("A change in job responsibilities with no decrease in pay or benefits does not reach the threshold required for a viable constructive discharge claim.") (citations omitted); *Konieczny v. New York State Div. of Parole,* 647 F. Supp.2d 256, 263 (W.D.N.Y. 2009) ("[U]nfavorable job assignments [ ] will not sustain a constructive discharge claim.) (citation omitted).

While there is evidence indicating that she disliked and was stressed by her new assignments, that alone does not show that a constructive discharge

occurred, even if her feelings were reasonable.  *See Konieczny,* 647 F. Supp.2d

at 263 ("[H]umiliation and stress will not sustain a constructive discharge claim.)

(citation omitted); *Spence,* 995 F.2d at 1156 ("a constructive discharge cannot be

proven merely by evidence that an employee… preferred not to continue working

for that employer…")*; see also Campbell v. New York City Transit Auth.,* No. 11-

CV-2827 (MKB), --- F. Supp.3d ---, 2015 WL 1349820, at *13 (E.D.N.Y. Mar. 26,

2015) (noting that the inquiry of whether working conditions are "intolerable" is an

objective inquiry, asking whether a reasonable person would feel that way, not

the plaintiff specifically) (applying the ADEA, Title VII and the ADA).

The fact that fellow employees ignored her and made jokes about her new

tasks is also insufficient to show that she was constructively discharge. *See*

*Moody v. New York City Dep't of Corrections,* 153 F. App'x 788, 789 (2d Cir.

2005) (finding that allegations of harassment in the workplace were insufficient

as a matter of law to establish an adverse employment action); *see also*

*Agostinello v. Great Neck Union Free Sch. Dist.,* No. CV05-5838 (WDW), 2009

WL 238865, at *17-18 (E.D.N.Y. Feb. 2, 2009) ("mere offensive utterances" that

plaintiff needed psychiatric help and would never be a supervisor were "nowhere

near egregious enough to create a hostile work environment" or a constructive

discharge claim).

For all of the foregoing reasons, the Court finds that no reasonable juror

could conclude that Ms. McMiller was constructively discharged.  Thus, her

discrimination claims based on a constructive discharge theory under the ADA

must be dismissed.

### ii.  Ms. McMiller Has Failed to Make Out a Prima Facie Reasonable Accommodation Case

An employer also violates the ADA "when it fails to 'mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee,' unless the employer can establish that the accommodations would 'impose an undue hardship.'"  *Jackan v. New York State Dep't. of Labor,* 205 F.3d 562, 566 (2d Cir. 2000) (quoting 42 U.S.C. §12113(b)(5)(A)) (alteration in original).  To establish a prima facie case on a reasonable accommodation claim, a plaintiff must prove that (1) she is "a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *Graves v. Finch Pruyn & Co., Inc.,* 457 F.3d 181, 184 (2d Cir. 2006) (citations omitted).  In analyzing failure to accommodate claims, the plaintiff must first prove that "'an accommodation exists that permits [her] to perform the job's essential functions.'"  *Jackan,* 205 F.3d at 566 (citation omitted).  "If the plaintiff meets that burden," the defendant may still rebut the plaintiff's case by proving that the requested accommodation is not reasonable.  *Id.* (citation omitted).

"'Summary judgment is… appropriate where a plaintiff fails to identify a facially reasonable accommodation that the defendant refused to provide… or when the employer offers an accommodation that is plainly reasonable.'"  *Howard v. United Parcel Serv., Inc.,* No. 12-cv-5344 (KBF), 2015 WL 1473517, at *7 (S.D.N.Y. Mar. 31, 2015) (quoting *Gronne v. Apple Bank for Sav.,* 1 F. App'x

64, 67 (2d Cir. 2001)).  Ms. McMiller argues that Precision Metal failed to accommodate her by providing her with the job she had before she was injured, which she believed she could perform with an accommodation.  She also argues that the job Precision Metal gave her, which consisted of scanning and shredding, did not adequately accommodate her injuries.

### a. Pre-Injury Job As Accommodation

Ms. McMiller's claim based on Precision Metal's refusal to allow her to continue in her old job after she returned to work fails for two reasons.  First, "the ADA is not a tool for commandeering an employer's legitimate business decisions merely by raising the flag of an alleged disability."  *Gronne v. Apple Bank for Sav.,* No. 98-CV-6091 JS MLO, 2000 WL 298914, at *6 (E.D.N.Y. Feb. 14, 2000) (citation omitted) (finding that the plaintiff's refusal to accept the accommodation for his disability that his employer chose to provide him did not show that the employer had failed to reasonable accommodate him), *aff'd* 1 F. App'x 64 (2d Cir. 2001).  "An employer need only offer a 'reasonable accommodation'; it need not provide the employee with the accommodation of her choice."  *Queery v. Messar,* 14 F. Supp. 2d 437, 445 (S.D.N.Y. 1998) (citation omitted) (finding that by offering the plaintiff "light duty" assignments, the defendant satisfied its obligations under the ADA despite the fact that plaintiff preferred a different accommodation).  Thus, the fact that Ms. McMiller preferred another accommodation, other than the one she was given, cannot form the basis of a reasonable accommodation claim.[7]

---

[7] The Court makes this finding without opining on whether the accommodation Ms. McMiller actually received was sufficient to accommodate her condition.  As discussed

Second, as discussed above in Section III(B)(i)(a), Ms. McMiller provides no proof, other than her own conclusory testimony and belief, that she could have done her old job.  This evidence is not sufficient to sustain her burden on summary judgment that she was able to perform the essential functions of her job with or without accommodation.

### b. Precision Metal's Chosen Accommodation

While performing the scanning and shredding job, Ms. McMiller also made three requests for accommodations to help her do the job with less pain.  She told her supervisors that the papers she shredded were too high up for her to reach comfortably, and they moved them to a lower level.  She informed managers that she was spending too much time standing to scan papers, and they brought in a mini-scanner so she could sit.  She also said that removing staples was painful, so they bought her another staple remover.  Because Precision Metal honored every single request she made for accommodation, Ms. McMiller's reasonable accommodation claim, to the extent it is based on these events, must be dismissed.  *See Graham v. Three Vill. Cent. Sch. Dist.,* No. 11-CV-5182, 2013 WL 5445736, at *19 (E.D.N.Y. Sept. 30, 2013) (finding that where a plaintiff testified that her employer had "honored" all requests for accommodation she had made and had engaged in an "interactive process" to try to provide her with the requested accommodations, plaintiff had failed to create a

---

below, Ms. McMiller had a responsibility to work with Precision Metal to hone her tasks so that they reasonably accommodated her.  Her failure to continue telling Precision Metal of her discomfort in doing the tasks assigned to her is fatal to her reasonable accommodation claim.  *See Nugent v. St. Luke's Hosp. Ctr.,* 303 F. App'x 943, 946 (2d Cir. 2008) ("An employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate.").

genuine question of material fact to sustain a failure to accommodate claim past the summary judgment stage).

While Ms. McMiller testified that she continued to experience pain from removing staples, even after Precision Metal bought her a new staple remover, she did not inform any managers. For a reasonable accommodation claim to lie, an employer must have been aware of the need for accommodation. *See Nugent v. St. Lukes-Roosevelt Hosp. Ctr.,* 303 F. App'x 943, 945-46 (2d Cir. 2008) ("With regard to the disability discrimination claims, federal regulations contemplate an 'informal, interactive process' involving employer and employee to identify a reasonable accommodation. An employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate.") (citation omitted); *Gallagher v. Town of Fairfield,* No. 3:10-cv-01270(JAM), 2015 WL 3453342, at * 12 (D. Conn. May 29, 2015) (granting summary judgment in favor of an employer that had worked with plaintiff "consistently" to provide the accommodations she requested, even if plaintiff was dissatisfied with the accommodations provided, because plaintiff caused the "breakdown" in the interactive process); *Zito v. Donahoe,* 915 F. Supp.2d 440, 447-48 (S.D.N.Y. 2012) (granting summary judgment on a reasonable accommodation claim because the plaintiff "was responsible for the breakdown in the interactive process" by failing to provide documentation to assist the employer in understanding the nature of his disability and how best to accommodate that disability); *see also Lewis v. Blackman Plumbing Supply L.L.C.,* 51 F. Supp.3d 289, 305 (S.D.N.Y. 2014) ("'It is… elemental that an

employer could not have discriminated against a plaintiff *because of* [her] disability if it was unaware that the plaintiff was, in fact, disabled.'") (citation omitted and emphasis in original).  Because Ms. McMiller did not follow up with her employer about the staple remover, her reasonable accommodation claim based on this ground must be dismissed.

## IV.    CONCLUSION

For all of the foregoing reasons, Precision Metal's Motion for Summary Judgment, ECF No. 28, is **GRANTED** in its entirety, and all of Ms. McMiller's claims are dismissed.


SO ORDERED at Bridgeport, Connecticut this 17th day of August 2015.


 /s/ Victor A. Bolden                               
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE